1  Todd M. Friedman (216752)
2  Suren N. Weerasuriya (278521)
   Adrian R. Bacon (280332)
3  **Law Offices of Todd M. Friedman, P.C.**
   324 S. Beverly Dr. #725
4  Beverly Hills, CA 90212
5  Phone: (877) 206-4741
   Fax: (866)633-0228
6  tfriedman@attorneysforconsumers.com
7  sweerasuriya@attorneysforconsumers.com
   abacon@attorneysforconsumers.com
8
9  *Attorneys for Plaintiff*

10

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  EDWARD MAKARON, on behalf of himself and all others similarly situated, | )  Case No. 2:15-cv-05145-DDP-E |
| 14 | ) |
| | )  **PLAINTIFF'S MEMORANDUM** |
| 15 | )  **OF POINTS AND AUTHORITIES** |
| | )  **IN OPPOSITION TO** |
| 16  Plaintiff, | )  **DEFENDANT'S MOTION TO** |
| | )  **DISMISS PURSUANT** |
| 17       vs. | )  **TO FED. R. CIV. P. 12(b)(6)** |
| 18 | ) |
| | )  **DATE:**      November 9, 2015 |
| 19  ENAGIC USA, INC., | )  **TIME:**      10:00 A.M. |
| | )  **CTRM:**      3 |
| 20 | )  **JUDGE:**      Hon. Dean D. Pregerson |
| 21  Defendant. | ) |
| | ) |
| 22 _____ | ) |

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

# I.   INTRODUCTION AND RELEVANT FACTS

This case stems from an unsolicited 22-minute prerecorded robo-call that Plaintiff Edward Makaron ("Plaintiff") received, advertising Defendant's Kangen alkaline water machines, and further soliciting Plaintiff to become a Distributor in Defendant ENAGIC USA, INC.'s multi-level marketing sales force (hereinafter "Enagic" or "Defendant").

Defendant's Motion to Dismiss fails to identify a legitimate basis warranting a dismissal of Plaintiff's and the putative class members' claims, without an adjudication on the merits, or any opportunity for discovery.   The crux of Defendant's motion rests on an erroneous assertion that Plaintiff has not pled (and cannot plead) that Defendant placed the calls to Plaintiff's cellular phone, which Plaintiff alleges violate the Telephone Consumer Protection Act ("TCPA").   This is simply incorrect.   Plaintiff clearly alleges numerous times in the Fist Amended Complaint that Defendant, or alternately that its distributor-agent, placed the offending calls to Plaintiff's cellular phone.

Moreover, it is disingenuous for Defendant to argue that Plaintiff cannot plausibly allege that Defendant placed the calls at issue, as the content of these calls included a prerecorded voice which advertised becoming a distributor for Defendant and becoming a member of its sales force.   It is equally disingenuous for Defendant to argue that Plaintiff cannot possibly allege, with particularity, that Defendant is either directly or vicariously liable for the calls placed by its own sales force.   In fact, Defendant's entire retail business model is premised on the outsourcing of its United-States-based sales force to Distributors, who are given instructions, training, technical support, customer lists, marketing information and other materials by Defendant,[1] in order to sell its controversial and scientifically-

---

[1] Enagic's "distributors" have exclusive access to these material via Defendant's web portal: https://www.enagic.com/distributor/.   Further, materials published by

criticized alkaline water devices.[2]  What is facially obvious about the prerecorded 22-minute phone call received by Plaintiff, is that someone from Defendant's web of distributors, whether an employee of Defendant, a third party contractor, or a subcontractor of an agent, placed calls to Plaintiff's cell phone, at Defendant's behest, in an attempt to solicit Plaintiff's involvement in Defendant's pyramid scheme.  Plaintiff has alleged specific facts relating to the agent of Defendant who contacted him, the nature of the calls, and plausibly asserts that Defendant is both directly and vicariously liable for this activity.[3]

It is bizarre and unclear how Defendant can assert that Plaintiff has not and cannot allege the requisite minimal particularity to overcome F.R.C.P 12(b)(6) and its liberal pleadings standards.  It is equally bizarre and unclear why Defendant

Defendant online, including the following promotional YouTube video, indicate that these distributors in fact are W-2 employees, not independent contractors: https://www.youtube.com/watch?v=CVBfSAsyPg4#t=43.  This video strongly suggests that Defendant's business model is devised much like a pyramid scheme.
[2] No doubt, Defendant has structured its business model in this fashion to avoid exposure in consumer class actions such as this, or other potential cases for its deceptive practices.  For years, claims made by these Distributors regarding the medical benefits of utilizing Enagic's Kangen Water machines have raised eyebrows among the scientific community.  See http://www.chem1.com/CQ/ionbunk.html (referring to Kangen Water as "Snake oil on tap"); and http://skeptoid.com/episodes/4139 ("Make no mistake about it: Ionizing and alkalizing water machines are a textbook example of inventing an imaginary problem that needs to be solved with expensive pseudoscientific hardware.  It should come as no surprise that the most expensive of these machines are usually sold through multilevel marketing: A one-two punch that first takes advantage of a layperson's lack of scientific expertise to interest them in the product, and then takes advantage of their lack of business or mathematical expertise to convince them that they're virtually guaranteed to become a millionaire through a pyramid model."); http://www.alkalinewaterionizers.org/consumer-reports-why-are-kangen-water-ionizers-so-expensive/;
http://www.bbb.org/losangelessiliconvalley/business-reviews/water-filtration-and-purification-equipment/enagic-usa-in-torrance-ca-13212508/complaints.
[3] Additionally, Defendant entirely failed to meet and confer with Plaintiff, as required by Local Rule 7-3, prior to the filing of its Motion.

1  would assert that an alleged 22-minute prerecorded infomercial-style robo-call sent
2  to Plaintiff's cell phone by an autodialer, which specifically discussed how the
3  recipient of the call could use this autodialer technology to call other consumers to
4  sell Defendant's goods and services, does not plausibly qualify as an ATDS call
5  under the TCPA.

6      Despite not once denying that it uses an ATDS or that its distributors and/or
7  employees placed this call to Plaintiff's cell phone, Defendant wastes the Court and
8  parties' time with a motion that asks the Court to end this class action lawsuit
9  without an opportunity to conduct basic discovery on these issues. Plaintiff has pled
10  more than sufficient facts establishing that he and the putative class are entitled to
11  relief on their TCPA claims. The Honorable Court should deny Defendant's
12  Motion to Dismiss in its entirety.

13  **II.    THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)**

14      The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA")
15  is "aimed at protecting recipients from the intrusion of receiving unwanted
16  communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 2007 U.S. Dist.
17  LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).  Indeed, the U.S. Supreme Court
18  has noted that consumers are outraged over the proliferation of automated
19  telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy
20  by Congress. *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012).

21      Congress enacted the TCPA in 1991 amidst an unprecedented increase in the
22  volume of telemarketing calls to consumers in America; the TCPA combats the
23  threat to privacy[4] being caused by the automated marketing practices, stating it is

24

25  [4] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (The
26  "TCPA was enacted in response to an increasing number of consumer complaints
   arising from the increased number of telemarketing calls," and that "consumers
27  complained that such calls are a 'nuisance and an invasion of privacy.'"). The
   Federal Communications Commission ("FCC") confirmed in 2003 that
28  "telemarketing calls are even more of an invasion of privacy than they were in

unlawful:

> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system** or an artificial or prerecorded voice—. . .

> (iii) **to any telephone number assigned to a** paging service, **cellular telephone service**...

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  According to the express text of the TCPA, the statute requires the calls to be made with an ATDS, which Congress defines as "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

To demonstrate a TCPA violation, Plaintiff need only show that Defendant (1) placed a call using an automatic telephone dialing system; (2) to any telephone number assigned to a cellular telephone service; (3) without the prior express consent of the Plaintiff.[5] *See Meyer v. Portfolio Recovery Assocs., LLC,* 2011 U.S. Dist. LEXIS 156610, *21 (S.D. Cal. Sept. 14, 2011).  Section 227(b)(1) of the TCPA expressly applied to "any call" made using an ATDS.  47 U.S.C.      § 227(b)(1).  The Ninth Circuit has held that this section of the TCPA should be analyzed as a content-neutral regulation.  *Moser v. F.C.C.,* 46 F. 3d 970, 973 (9th

---

1991," and "we believe that the record demonstrates that telemarketing calls are a substantial invasion of residential privacy, and regulations that address this problem serve a substantial government interest." *Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 (2003), F.C.C. Comm'n Order No. 03-153, modified by 18 F.C.C.R. 16972.

[5] Notably, Defendant does not challenge the sufficiency of Plaintiff's allegation that Plaintiff was called on his "cellular" telephone, or that the calls were placed without prior express consent of Plaintiff, which must mean that Defendant believes these elements are properly pled.

Cir. 1995). A single automated call placed via an ATDS without prior express consent violates the TCPA. *See Satterfield,* 569 F. 3d at 956.

## III.   STATEMENT OF FACTS

Plaintiff alleges that beginning in or around May of 2015, including on May 18, 2015, Defendant contacted Plaintiff on his cellular telephone, (310) 210-3272, from telephone number (469) 340-4080, in an attempt to sell Plaintiff Defendant's services and recruit him into Defendant's network of third-party Distributors. First Amended Complaint, Dkt. No. 15. ¶¶ 6-8 (hereinafter "FAC"). The content of the call was a 22-minute prerecorded message, sent via a robo-dialer, during which Defendant's agent sought to enlist Plaintiff as a Distributor for Enagic, to expand the scope of Defendant's widely publicized pyramid scheme sales model. *Id*. at ¶ 7. During the 22-minute prerecorded infomercial-style pitch, Defendant's representative specifically referenced working for Enagic, selling its alkaline water filtration systems, and informing Plaintiff that he would receive as part of his enlistment package, access to Defendant's robo-dialing tool, which was being used to contact Plaintiff, as well as a "list" of potential customers towards whom he could place such calls to make his own pitches. *Id*. This 22-minute prerecorded infomercial-style robo call facially appears to be part of a standardized and widespread advertising campaign. *Id*.

Plaintiff alleges that he received a call in the following days from an individual identifying himself as a representative of Enagic, who engaged in further efforts to recruit Plaintiff to Defendant's sales force. Defendant's representative sent Plaintiff an email containing various materials from Defendant regarding its alkaline water machines, and how to become a distributor of these machines working for Defendant. *Id*. at 8. Plaintiff alleges that Defendant utilized an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1) ("ATDS"), in order to place the automated and prerecorded robo calls to Plaintiff.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Id*. at ¶ 9.  Further, Plaintiff has never been a customer of Defendant's services and never provided any personal information to Defendant.  Thus, Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).  *Id*. at ¶ 12.

## IV.   LEGAL STANDARD

A Fed. R. Civ. P. 12(b)(6) motion to dismiss is properly granted where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*, 550 U.S. 544, 570 (2007).  However, "specific facts are not necessary." *Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir. 2011) (quoting *Erikson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (plausibility standard does not require "the who, what, when, where and how of the misconduct alleged.").  Nor is the "[t]he standard at this stage...that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).  Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

In order to survive a 12(b)(6) motion, a complaint need not state detailed factual allegations.  *Id*. at 555.  In deciding a 12(b)(6) motion and when considering the legal sufficiency of a claim, courts accept factual allegations as true, drawing all reasonable inferences therefrom in the favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F. 3d 336, 337-38 (9th Cir. 1996).  The Ninth Circuit has held that a complaint should not be dismissed under a Rule 12(b)(6) motion "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)

1  (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir.
2  1984)).[6]

3      Moreover, in the Ninth Circuit, the Rule 12(b)(6) motion "'is viewed with
4  disfavor and is rarely granted.'" *McDougal v. County of Imperial*, 942 F.2d 668,
5  676 n.7 (9th Cir. 1991) (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270,
6  1274 (9th Cir. 1986)). Finally, "[d]ismissal can be based on the lack of a
7  cognizable legal theory or the absence of sufficient facts alleged under a
8  cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699
9  (9th Cir. 1990). Because Plaintiff's Complaint properly and adequately states a
10 claim for relief for violations of the TCPA, Defendant's Motion should be denied.
11 Further, Ninth Circuit Authority mandates that if the complaint can be amended,
12 the Court should give leave to amend.

13 **V.   ARGUMENT**

14     **A.   THE TCPA IS CONTENT NEUTRAL WITH REGARD TO CELL PHONE**
15             **CALLS PLACED WITH AN ATDS AND WITHOUT PRIOR EXPRESS**
16             **CONSENT**

17     It must be addressed as a preliminary matter, that Defendant egregiously
18 misstates rudimentary TCPA law with regard to content neutrality of dialer calls
19 placed to consumer cellular phones.  The plain language of the TCPA does not
20 require that the content of a robo-call to a consumer's cell phone relate in any
21 fashion to an advertisement.  The language Defendant cites to in support of its
22 erroneous arguments, 47 U.S. Code § 227(c), relates to rulemaking authority of the
23 FCC, with regard to *landline* calls, not cell phone calls 47 U.S. Code § 227(c)
24 ("Within 120 days after December 20, 1991, the Commission shall initiate a
25 rulemaking proceeding concerning the need to protect **residential telephone**
26 subscribers' privacy rights to avoid receiving telephone solicitations to which they

27
28 _____
[6] *See e.g.*, *Yang v. DTS Financial Group*, 570 F. Supp. 2d 1257 (S.D. Cal. 2008)
(denying  motion to dismiss and motion for summary judgment prior to discovery).

object.") *emphasis added*.  The plain *applicable* language of the statute, governing cell phone calls (as is alleged in the case at bar) unambiguously declares the following conduct to be unlawful:

> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system** or an artificial or prerecorded voice—. . .
>
> (iii) **to any telephone number assigned to a** paging service, **cellular telephone service**...

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).[7]

Plaintiff was called by Defendant's representative on his cellular phone, which is clearly alleged in the complaint.  FAC ¶ 6.  As a result, Defendant's artificial distinction is of no moment, as the TCPA is content neutral with regard to ATDS calls made to cellular phones without prior express consent (as was the case here).  *Moser v. F.C.C.,* 46 F. 3d 970, 973 (9th Cir. 1995); *In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F.Supp.2d 1253, 1261-62 (S.D. Cal. 2012); *Sherman v. Yahoo! Inc.* 997 F.Supp.2d 1129, 1134 (S.D. Cal. 2014) (citing *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009) for the proposition that the statutory language of the TCPA is unambiguous as to its content neutrality with regard to cell phone calls).[8]

---

[7] Curiously, Defendant cites the correct legal standard in its moving papers, but goes on to disregard it and later apply an incorrect standard under 47 U.S.C. § 227(c), which does not apply to cellular phone calls.

[8] Incidentally, even if it were a requirement of the TCPA that robo calls to cell phones (as opposed to residential lines) without consent needed to constitute an advertisement, the 22 minute robo-call here was a "dual purpose" call. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. Dec. 27, 2012).  For instance, during one portion of the 22 minute infomercial style call, the representative of Enagic states "our experience is, for every ten people that listen to this presentation,

Further, the cases cited by Defendant do not hold as Defendant has represented to the court. *Reardon v. Uber Technologies*, 2015 WL 4451209 (N.D. Cal. July 19, 2015) merely observed that recruiting calls placed to consumers' cellular phones require a showing, by Defendant, of an affirmative defense of prior express consent given by the consumers. *Id* at *5. *Friedman v. Torchmark Corp.*, 2013 WL 1629084 (S.D. Cal. Aug. 13, 2013) involved residential calls, not ATDS calls to cellular phones, the standards for which fall under the rules and regulations promulgated by the FCC pursuant to its rulemaking authority under 47 U.S. Code § 227(c), and not under the plain language of the TCPA, applicable to cellular phones, as cited above.

Finally, there is no requirement that a consumer's cellular phone be placed on the Do Not Call List for it to be actionable under the TCPA. Defendant cannot cite a single case that imposes such a requirement on ATDS calls placed to cellular phones, as none exist. Again, this requirement relates to landlines.

Defendant's citations to this line of cases and this proposition of law border on misrepresentations to the tribunal, and should be entirely disregarded.[9]

**B.   PLAINTIFF HAS ADEQUATELY PLED THAT DEFENDANT'S REPRESENTATIVE CONTACTED PLAINTIFF UTILIZING AN AUTOMATIC TELEPHONE DIALING SYSTEM, WITHOUT PRIOR EXPRESS CONSENT**

Defendant erroneously argues that Plaintiff has not alleged that Defendant called Plaintiff using an ATDS. A plain reading of the body of the First Amended Complaint quickly dispatches this factually erroneous argument. As described above, Plaintiff alleges that "On May 18, 2015, Plaintiff received a call from

---

the one that you're listening to right now in fact, at least one of them is going to become a customer."

[9] Undersigned counsel explained this in great detail during a recent phone call with counsel for Enagic, yet, shockingly, this line of argument was not withdrawn from Enagic's Motion.

Defendant" and that this call was placed using an ATDS.  FAC ¶ 7.  The content of the call was a 22-minute prerecorded message, sent via a robo-dialer, during which Defendant's agent sought to enlist Plaintiff as a Distributor for Enagic, to expand the scope of Defendant's widely publicized pyramid scheme sales model.[10] *Id*.  During the 22-minute prerecorded infomercial-style pitch, Defendant's representative specifically referenced working for Enagic, selling its alkaline water filtration systems, and informing Plaintiff that he would receive as part of his enlistment package, access to Defendant's robo-dialing tool, which was being used to contact Plaintiff, as well as a "list" of potential customers towards whom he could place such calls to make his own pitches.  *Id*.

Plaintiff later received a follow up call from an individual who identified himself as a representative of Defendant (likely a Distributor/employee), who described Defendant's products further, and later sent Plaintiff an email, filled with hyperlinks leading to videos, and promotional materials created by Defendant.  FAC ¶ 8.   By all accounts, the individual appeared to be an employee of Defendant, and Plaintiff alleged as such by numerously referring to the individual as a "representative" of Defendant.  FAC ¶¶ 7-8.  This is a plausible allegation, in light of the fact that online materials, cited *supra*, indicate that Defendant's supposed third party Distributors are actually W-2 employees.  Furthermore, even if they are classified as independent contractors, the Department of Labor, and

---

[10] Plaintiff recorded the 22 minute robo-call, and is in possession of it.  Undersigned counsel has listened to the recording in full, and will bring a copy of it to Court during the hearing.  Listening to the recording, it is patently obvious that it was created by Defendant, and disseminated to its distributor sales staff.  Defendant would have the Honorable Court believe that a third party contractor who is selling Enagic's Kangen alkaline water devices as a side business, concocted a plan, independent of Defendant's wishes and without its involvement, direction, control, authorization, or knowledge, to purchase expensive and complex dialing equipment, create a 22 minute presentation, detailing the Kangen water machines and the business model of Defendant, and attempt to enlist more individuals to join Defendant's sales force.  Defendant's position is completely untenable.

California State Courts interpreting the California Labor Code have made it abundantly clear that the operative test for determining whether a laborer is an employee vs. independent contractor, sets a very low bar.  See *Martinez v. Combs*, 49 Cal.4[th] 35, 64 (2010) (holding that to employ is defined as either having authority to exercise control over *either* wages, hours, *or* working conditions, or by suffering or permitting the laborer to work); and Department of Labor Administrator's Interpretation No. 2015-1, July 15, 2015 ("most workers are employees under the FLSA's broad definitions")[11]

Alternatively, even if Defendant's sales force is determined to be made up of independent contractors, Plaintiff alleges sufficient facts to demonstrate vicarious liability.  It is a well-established maxim of agency law that if a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority.  Restatement 3d of Agency, § 2.03.  It is implausible to assume that a third party operating with no level of direction or agency from Enagic would widely disseminate a 22-minute infomercial-style robo-call to the masses, enlisting people to purchase and distribute Enagic products, of their own accord.  The only plausible explanation is that they were either an employee of Enagic, or a third party agent, possessing Enagic's actual, or at least apparent authority.  Under either scenario, Defendant would be liable for their actions.

In sum, contrary to the argument presented in Defendant's Motion, Plaintiff alleges contextual facts to support his allegations that Defendant utilizes an ATDS, and that it was Defendant, or at least, Defendant's agent, which placed the

---

[11] Publically available on the DOL's website here: http://www.dol.gov/whd/workers/Misclassification/AI-2015_1.htm. Last viewed October 15, 2015.

offending call to Plaintiff's cellular phone without prior express consent.  FAC ¶¶ 6-12.  As stated above, when considering the legal sufficiency of a claim, courts accept factual allegations as true, drawing all reasonable inferences therefrom in the favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F. 3d 336, 337-38 (9th Cir. 1996). The Ninth Circuit has held that a complaint should not be dismissed under a Rule 12(b)(6) motion "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir. 1984)).[12]

Furthermore, "it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS, such as what type of machines were used to make a call or how those machines functioned." *Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558, *11 (N.D. Ill. Dec. 18, 2012). The Northern District recently explained that whether an ATDS was used "should be addressed largely through merits-based discovery into defendants' records." *Lee v. Stonebridge Life Ins. Co.*, 2013 U.S. Dist. LEXIS 19774, *10 (N.D. Cal. 2013). Plaintiff supports his allegations that Defendant used an ATDS with *all known specific facts* regarding the message and equipment used to transmit it.

Plaintiff's FAC not only alleges facts as to required elements of a TCPA violation, it provides ample factual context to give Defendant fair notice of the basis of Plaintiff's claims, including Plaintiff's allegation that he received several unsolicited calls from Defendant, the period during which Plaintiff received the calls, the purpose of Defendant's calls, the fact that the 22-minute phone call to Plaintiff's cell phone was prerecorded, and automatic in nature, as well as the name

---

[12] *See e.g.*, *Yang v. DTS Financial Group*, 570 F. Supp. 2d 1257 (S.D. Cal. 2008) (denying  motion to dismiss and motion for summary judgment prior to discovery).

of the representative Distributor of Defendant who was attempting to contact Plaintiff thereafter.

Therefore, dismissal of Plaintiff's Complaint is clearly not warranted and Plaintiff should be provided the opportunity during discovery[13] to determine the specifics regarding the ATDS technology[14] employed by Defendant in this instance, as well as the full breadth of materials that Defendant sends to its Distributor sales force team.  As such, Plaintiff's allegations meet the liberal pleading standards here, and Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety.

## C. DEFENDANT'S COUNSEL FAILED TO MEET AND CONFER BEFORE FILING A MOTION TO DISMISS

Local Rule 7.3 for the U.S. District Court, Central District of California requires that, prior to contemplating the filing of any motion, a party is required to contact counsel, at least seven days prior to the filing of any motion, to discuss thoroughly "the substance of the contemplated motion and any potential resolution." L.R. 7.3.  Failing to meet and confer with counsel, in and of itself, is grounds for denying a party's Motion.  *Singer v. Live Nation Worldwide, Inc*., 2012 WL 123146 (C.D.Cal., 2012) (denying defendant's motion for summary judgment on the grounds that defendant's counsel of record failed to properly meet and confer with counsel, as required by Local Rule 7-3).

Defendant notably does not include an attestation as to compliance with

[13] In *Knutson v. Reply!, Inc.,* 2011 U.S. Dist. LEXIS 156409 (S.D. Cal. Apr. 13, 2011), the Court noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and indicated that Plaintiff could rely on allegations about the details of the call from which the Court could infer the use of an automatic dialing system.

[14] *See* 2003 FCC Order 2003 WL 21517853 at *46 (Confirming that the ATDS requirement was to be interpreted broadly to apply to a wide spectrum of evolving technologies, including technology that is used to dial "lists" or "databases" of numbers, since such technology has the basic functional "capacity to dial numbers without human intervention.")

L.R.7-3 in its Motion to Dismiss.  That is because it did not comply with the Local Rule.[15]  Undersigned counsel, upon seeing Defendant's filing, immediately reached out to counsel for Defendant to request a meet and confer, and implore Defendant to withdraw its motion, as there was no question that further discussions regarding any perceived deficiencies in the alleged particularity could be cured.  Undersigned counsel spoke extensively with counsel for Defendant regarding the theories of liability, and cited to a depth of knowledge regarding Defendant's business model and Distributor sales force.

Indeed, this was a prime case where a meet and confer under the Local Rules, prior to the filing of a Motion to Dismiss, could have saved the Court valuable resources.  On this basis alone, Plaintiff respectfully submits that the Court should exercise its discretion and deny Defendant's Motion.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss.  Alternatively, should the Court be inclined to grant Defendant's Motion to Dismiss, Plaintiff respectfully requests leave to amend Plaintiff's Complaint.

Dated:  October 18, 2015          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC


By:   /s Adrian R. Bacon
      Adrian R. Bacon, Esq.
      Attorney for Plaintiff

---

[15] Incidentally, this is not the first time Defendant has failed to meet and confer with Plaintiff prior to filing a Motion.  Indeed, undersigned counsel's declaration filed previously with the Court, indicated that Defendant had failed to meet and confer under L.R. 7-3 when it filed its first Motion to Dismiss.  Dkt. No. 16 ¶ 6.  Such repeated disregard of the local rules cannot be ignored.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 18th day of October, 2015, with:

United States District Court CM/ECF system

Notification sent electronically on this 18th day of October, 2015, to:

Honorable Judge Dean D. Pregerson
United States District Court
Central District of California

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
FRED R. PUGLISI
JAY T. RAMSEY

GARDERE WYNNE SEWELL
DWIGHT M. FRANCIS

Attorneys for Defendant
ENAGIC USA, INC.

<u>s/Adrian R. Bacon</u>
Adrian R. Bacon