O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDWARD MAKARON, on behalf of himself and all others similarly situated, | ) ) ) ) | Case No. CV 15-05145 DDP (Ex) |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | ) ) | [Dkt. No. 78] |
| ENAGIC USA, INC., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) ) | |

Presently before the court is Plaintiffs' Motion for Class Certification. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Defendant Enagic USA, Inc. ("Enagic") is a "direct selling company" that markets alkaline water filtration and ionization systems. Enagic does not sell devices to consumers in the United States directly, but instead utilizes a network of thousands of

distributors. The parties dispute whether these distributors are independent contractors or are controlled by Enagic.

On May 18, 2015, Plaintiff received a call on his cell phone. (Declaration of Edward Makaron ¶ 3.) When Plaintiff answered the call, he heard a 22-minute prerecorded phone message encouraging him to purchase an Enagic water machine and to become a distributor. (Makaron Delc. ¶ 3, Ex. M-2.) Two days later, Plaintiff received a phone call from Gary Nixon, who tried to convince Plaintiff to purchase an Enagic product and recruit Plaintiff to be an Enagic salesperson. (Makaron Decl., ¶¶ 7-9.)

Under the Telephone Consumer Protection Act ("TCPA"), it is unlawful "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A). It is also unlawful to initiate a phone call to a residential phone line with an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(B). Plaintiff represents that he has obtained information from third party calling services, including Phone Prospector and Phone Burner, that three of the thousands of distributors associated with Defendant made over fifteen thousand phone calls using third party phone dialing systems. Plaintiff's Second Amended Complaint alleges that Engagic and/or its distributors, who are alleged to be Enagic's agents, called Plaintiff's cell phone with an automatic dialing system and played a pre-recorded message, in violation of the TCPA. Plaintiff now moves to certify a class under Federal Rule of Civil Procedure Rule 23(b)(2) and 23(b)(3) comprised of "[a]ll persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class

2

Member's telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, between July 8, 2011 and Present," as well as various related subclasses.

## II. Legal Standard

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. See Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508. These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23 requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011).

Rule 23(b) defines different types of classes. Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2012). Rule 23(b)(2) requires that the party opposing the class "has acted or refused to act on grounds that apply generally to the class . . . ." Fed. R. Civ. Proc. 23(b)(2). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over individual questions . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**III. Discussion**

As an initial matter, the court observes that Defendant devotes a substantial portion of its written opposition to arguments that are inapplicable to the instant motion. Defendant contends, for example, that "[t]here is no evidence that either Enagic USA or any Enagic distributor used an automated telephone dialing system . . . or recorded voice to place calls in violation of the . . . TCPA" and repeatedly asserts that "Plaintiff presents no evidence of a TCPA violation . . . ." (Opposition at 1:3-6, 24; 8:16-18 ("[D]espite having had over 2-years to obtain evidence that such robo or [auto-dialed] calls occurred, . . . the Plaintiff was not able to do so.").  A motion for class certification is not, however, a motion for summary judgment or a mini-trial. Ellis, 657 F.3d at 981, 983 n.8. Although the merits of a case may overlap with certification questions to some extent, this Court will only look to the merits "inasmuch as it must determine whether common questions exist, not to determine whether class members could actually prevail on the merits of their claims." Id. Furthermore, Defendant's arguments regarding the ascertainability and administrative feasibility of the

proposed class (Opp. at 5-10) ignore binding Ninth Circuit authority. Indeed, the Ninth Circuit has explicitly stated that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification, . . ." and declined to impose any such requirement. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1133 (9th Cir. 2017). Much of Defendant's opposition, therefore, is simply inapt.

A. Rule 23(a) Factors

i. Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Ninth Circuit has elaborated that "impracticable" does not mean "impossible," and that the appropriate inquiry is whether the difficulty and inconvenience of litigating separate claims would render that course of action impractical. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964)). The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 330 (1980). The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement. Harik v. Cal. Teachers Ass'n, 326 F.3d 1042, 1051 (9th Cir. 2003); Davis v. Four Seasons Hotel Ltd., 277 F.R.D. 429, 435 (D. Hawaii 2011).

Defendant contends that Plaintiff has failed to demonstrate numerosity because he has done no more than speculate as to the number of putative class members. (Opp. at 20-21.) Indeed, a

plaintiff must show at least a reasonable estimate of class members to satisfy Rule 23(a)(1). Nuyen Da Yen v. Kissinger, 70 F.R.D. 656, 661 (N.D. Cal. 1976.) To the extent Defendant suggests that Plaintiff is only speculating as to class size because he cannot personally identify any members of the class (Opp. at 21:3), however, that position has no merit. Defendant's remaining contention, that the tens of thousands of calls made by Enagic distributors through third party dialing services such as PhoneBurner are of no moment because those services are "power dialers" rather than "auto dialers" involves questions of fact beyond the scope of a motion for class certification. See 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.") (emphasis added). Plaintiff's identification of hundreds of thousands of phone calls made by third party dialing systems on behalf of only a small number of Enagic distributors is a sufficient basis to estimate a class size well in excess of forty members.

    ii. Commonality

 Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, "[t]he requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir.2011) (internal quotation marks and brackets omitted). Nevertheless, common questions must be ones that will "generate

common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350.

Common factual and legal questions abound here, including questions whether Enagic is liable for its distributors' actions and whether the third party dialing services used, or qualify as, autodialer equipment. Defendant's brief argument that distributors may have used different calling methods is not compelling. Plaintiff has identified a small number of third party dialing services, the nature and capabilities of which will likely be relatively simple to determine and generally applicable to all distributors utilizing those services. See, e.g. Caldera v. Am. Med. Collection Agency, 320 F.R.D. 513, 517 (C.D. Cal. 2017); Amini v. Heart Savers, LLC, No. SACV 15-01139 JVS, 2016 WL 10621698 at *3 (C.D. Cal. Oct. 17, 2016). Nor is the court persuaded by Defendant's assertion that questions of individual consent destroy commonality. Although express consent would indeed be a defense to TCPA allegations, 47 U.S.C. § 227(b), Defendant would bear the burden of showing express consent, and has not provided any evidence of such or demonstrated any consent mechanism that might require individualized determinations. See Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017); Stern v. DoCircle, Inc., No. SACV 12-2005 AG, 2014 WL 486262 at *8 (C.D. Cal. Jan. 29, 2014); cf. Blair v. CBE Group, Inc., 309 F.R.D. 621, 628 (S.D. Cal. 2015) (finding lack of predominance where Defendant provided evidence regarding specific mechanism and record keeping regarding consent); Connelly v. Hilton Grand Vacations Co., LLC, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (same); see also Satterfield v. Simon &

Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009) (explaining express consent).

### iii. Typicality and Adequacy

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. The test of typicality is whether other members have the same or similar injury . . . ." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted) (citations omitted). Adequacy of representation is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Inasmuch as it is conceptually distinct from commonality and typicality, this prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 158 n.13 (1982). Thus, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis, 657 F.3d at 985.

Defendant's arguments regarding typicality and adequacy center on Plaintiff's inability to recall certain details at his deposition, and are not well taken. Defendant points out, for

8

example, that Plaintiff could not recall whether he received a phone call from Enagic itself, had no knowledge of Enagic's policies regarding auto dialers, and did not know whether Enagic has agreements with third party dialing services. (Opposition at 16-17.) Defendant further claims that Plaintiff's lack of recollection mean that he lacks standing to pursue an individual claim, let alone represent a class. (Id. at 17-18.) It is unclear to the court, however, how any of Plaintiff's supposed failings are pertinent to the nature of his claims or give any indication that he would not vigorously represent the interests of absent class members, let alone implicate questions of standing. Plaintiff could not reasonably be expected to have personal knowledge of Enagic's own business practices and, more importantly, has never asserted that he received any type of call from Enagic directly. He claims, rather, that he and the other members of the putative class received improper calls from Enagic distributors. This is sufficient to confer standing, and this Court can see no reason why Plaintiff's claims are not typical of the class nor why Plaintiff or his counsel cannot adequately represent the interests of absent class members. See Van Patten, 847 F.3d at 1043.

B. Rule 23(b) factors

i. Rule 23(b)(2)

Rule 23(b)(2) requires that the party opposing the class "has acted or refused to act on grounds that apply generally to the class . . . ." Fed. R. Civ. Proc. 23(b)(2). The key to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or

as to none of them." Dukes, 564 U.S. at 360 (citation omitted). Certification under Rule 23(b)(2) is not appropriate where the primary relief sought is monetary, rather than declaratory or injunctive. Ellis, 657 F.3d at 986.

Defendant argues that certification under Rule 23(b)(2) is not appropriate because Plaintiff seeks statutory damages on behalf of the putative class. Defendant appears to ignore, however, that Plaintiff seeks certification of an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3). Courts may, and often do, utilize this type of "hybrid" certification. See, e.g., Zepeda v. PayPal, Inc., No. C 10-1668 SBA, 2017 WL 1113293 at *17 (N.D. Cal. Mar. 24, 2017); Raffin v. Medicredit, Inc., No. CV 15-4912 GHK, 2017 WL 131745 at *10 (C.D. Cal. Jan. 3, 2017).[1] Defendant's only other argument is that this case does not involve a common course of action on Enagic's part that might be remedied by a single injunction because Enagic's distributors each formulated their own sales methods. (Opp. at 24.) As discussed above, however, that argument presumes an answer to one of the central, common questions at issue in this case. Should Enagic ultimately be found vicariously liable for the actions of its distributors, the wrongful conduct alleged here can be enjoined with respect to all

---

[1] This Court therefore respectfully disagrees with the Connelly court's conclusion that a TCPA class' "parallel request for injunctive" relief cannot be certified under Rule 23(b)(2) simply because putative class members are also entitled to statutory damages and named plaintiffs may seek "parallel" certification of a damages class under Rule 23(b)(3). Connelly, 294 F.R.D. at 579.

class members with a single injunction.  Certification is therefore appropriate under Rule 23(b)(2).[2]

### ii.  Rule 23(b)(3)

A class action may be certified under Rule 23(b)(3) if a plaintiff shows that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). Predominance "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455, 469 (2013).

The parties' arguments regarding Rule 23(b)(3) predominance are largely derivative of their other arguments.  Plaintiff asserts that because there can be no doubt that use of an auto dialer or a pre-recorded message is a violation of the TCPA, the only real issue in this case is the common question whether Enagic is vicariously liable for the actions of its distributors.  Defendant appears to respond that such an inquiry would necessarily involve

---

[2] Defendant also appears to argue that certification is inappropriate because class members will be entitled to different amounts of statutory damages.  (Opp. at 23:18-24.)  Although that argument appears more pertinent to a Rule 23(b)(3) analysis than a Rule 23(b)(2) analysis, it is, in any event, not persuasive. Differences in damages calculations are not obstacles to class certification.  Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 988 (9th Cir. 2015), Jimenez v. Allstate Insurance Co., 765 F.3d 1161, 1167 (9th Cir. 2014).

11

individualized determinations about Enagic's liability for each separate distributor's actions. (Opp. at 27:8-11.) This argument, however, ignores Plaintiff's theory of the case. Plaintiff does not contend that Enagic is liable for the actions of certain distributors but not others. Rather, Plaintiff contends that Enagic is liable for <u>all</u> of its distributors due to "an employer-employee relationship with its Distributors, direct agency through a high level of control pursuant to standard contracts, or ratification through Enagic's knowledge about robodialing practices . . . ."[3] (Reply at 18:14-17.) These theories implicate common, rather than individualized, questions.

Defendant also reiterates that individual questions of class member consent will predominate. Defendant again cites to <u>Blair</u>, 309 F.R.D. at 629, where the court denied Rule 23(b)(3) certification in a TCPA case because of individualized questions regarding class member consent. Critically, however, the <u>Blair</u> court emphasized that the defendant in that case had provided some evidence that all of the named Plaintiffs had consented, in varying ways, to receive phone calls from the defendant. <u>Blair</u>, 309 F.R.D.

---

[3] Plaintiff has submitted evidence, for example, that class members notified Enagic officials that distributors were improperly utilizing auto dialer and robo-calling devices, and that Enagic not only failed to take any disciplinary action against distributors, but also threatened to seek recovery of legal fees and costs if class members sought to hold Enagic liable. Plaintiff has also submitted evidence of Enagic policies that forbid distributors from using their own marketing materials and require distributors to use advertising methods approved by Enagic, but do not explicitly forbid the use of auto dialer or robocall technology, stating instead that "<u>[t]he use of the Company's name</u> or copyrighted materials <u>may not be made with automatic calling devices</u> or "boiler room" operations either to solicit distributors or retail customers. (Friedman Decl., Ex. 4 ¶ 54) (emphases added.)

12

at 629. See also Connelly, 294 F.R.D. at 578. As the Caldera court explained, however, "[w]here a party has not submitted any evidence of express consent, courts will not presume that resolving such issues requires individualized inquiries." Caldera, 320 F.R.D. at 519 (quoting Bee, Denning, Inc. v. Capital All. Grp., 310 F.R.D. 614, 629 (S.D. Cal. 2015)) (internal alteration omitted). Defendant's speculation that individual class members may have consented to receive auto dialed or pre-recorded phone messages is therefore insufficient to demonstrate that individual questions of consent predominate.[4] Accordingly, certification of a damages class pursuant to Rule 23(b)(3) is appropriate.

C. Failsafe Class

Lastly, Defendant argues that the proposed class should not be certified because it is a "failsafe class." Failsafe classes are defined in terms of success on the merits of the case in a way where "whether a person qualifies as a member depends on whether the person has a valid claim." Messner v. Northshore Univ. HealthSystem, 699 F.3d 802, 825 (7th Cir. 2012); Mullins v. Direct Digital, LLC, 795 F.3d 654, 660 (7th Cir. 2015). The Ninth Circuit has yet to opine on the propriety of failsafe classes. See Pepka v. Kohl's Dep't Stores, No. CV-16-4293, 2016 WL 8919460, at *3 (C.D. Cal. Dec. 21, 2016). Indeed, one Ninth Circuit court has observed, without holding, that Ninth Circuit "caselaw appears to disapprove of the premise that a class can be fail-safe." Melgar v. CSK Auto, Inc., 681 F. App'x 605, 607 (9th Cir. 2017) (citing Vizcaino v. U.S.

---

[4] Defendant also argues, without elaboration, that individualized questions of standing predominate. The basis for this argument is not clear to the court.

13

Dist. Court for W. Dist. of Washington, 173 F.3d 713, 722 (9th Cir. 1999). Some courts, however, have held that failsafe classes should not be certified because they only allow for two possible results: either the class members win, or, "by virtue of losing," fall outside the definition of class membership and are thus not bound by the judgment. Messner, 699 F.3d at 825; see also Pepka, 2016 WL 8919460 at 3-4.

This Court need not determine whether failsafe classes are appropriate because the class proposed here is not a failsafe class. As discussed above, the predominant question here is whether Enagic is vicariously liable for auto-dialed or robocalls made by distributors. Should Enagic prevail on that question, class members who received phone calls from an Enagic distributor will not fall outside the parameters of the defined class, will be bound by the judgment, and would be barred by res judicata from re-litigating their claims against Enagic. See Mullins, 795 F.3d at 661.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Class Certification is GRANTED. The court certifies a class comprised of all persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class Member's telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, between July 8, 2011 and Present. The court also certifies the following subclasses:

(1) Prerecorded Voice Subclass, comprised of all persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class Member's telephone

14

1 | made through the use of any system that utilized an artificial
2 | or prerecorded voice, between July 8, 2011 and Present;

(2) Cell Phone Subclass, comprised of all persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class Member's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, between July 8, 2011 and Present;

(3) Prerecorded Voice Cell Phone Subclass, comprised of all persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class Member's cellular telephone made through the use of any system that utilized an artificial or prerecorded voice, between July 8, 2011 and Present; and

(4) Prerecorded Voice Cell Phone 2015 subclass, comprised of all persons within the United States who received a telephone call from Defendant or one of its Distributors, on said Class Member's cellular telephone made through the use of any system that utilized an artificial or prerecorded voice, between January 1, 2015 and December 31, 2015.

//
//
//
//
//

Plaintiff is appointed Class Representative and Plaintiff's attorneys are appointed as Class Counsel.

IT IS SO ORDERED.

Dated: March 13, 2018

DEAN D. PREGERSON
United States District Judge